United States District Court
Southern District of Texas
**ENTERED**
May 11, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHANITA TERRELL, § | |
| § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-22-302 |
| § | |
| HARRIS COUNTY, et al., § | |
| § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Shanita Terrell went to a bar in Houston on the night of February 23, 2020. (Docket Entry No. 13 at ¶¶ 12, 14). Two Harris County sheriff's deputies, Michael Jarell Hines and Mark Cannon, worked second jobs at the bar. (*Id.* at ¶¶ 5, 7, 12, 15). Both deputies were there that night, driving their marked sheriff's office vehicles and wearing their uniforms, which included the sheriff's office insignia, a gun, a badge, and other official equipment. (*Id.* at ¶¶ 12, 15).

Terrell alleges that when she left the bar, "there was visibly and audibly something wrong with her and she was not in her usual state of mind." (*Id.* at ¶ 16). She alleges that Deputy Hines and Deputy Cannon ordered her to get into the front seat of the officer vehicle against her will, stating that they would drive her home. (*Id.* at ¶ 17). Terrell alleges that their "real motive may have been to allow sexual assault of Ms. Terrell by Deputy Hines." (*Id.*).

Terrell woke up the next morning at home in her bed with pain in her vaginal area. She went to a hospital and was tested with a rape kit. (*Id.* at ¶ 18). Deputy Hines's semen was found on her undergarments. (*Id.* at ¶ 19). Terrell alleges that she did not consent to having sex with Deputy Hines. (*Id.*).

In August 2021, Deputy Hines was indicted in Texas state court for sexually assaulting Terrell. (Docket Entry No. 1-1). Hines had previously been arrested for sexually assaulting a child in Harris County in September 2018. That charge was reported to then Harris County Sheriff, Ed Gonzalez, but no-billed by a grand jury. (Docket Entry No. 13 at ¶¶ 10, 21).

Terrell sued Deputy Hines and Deputy Cannon in their individual capacities under 42 U.S.C. § 1983 for violating her Fourth and Fourteenth Amendment rights. (*Id.* at 6–8). Terrell also sued Harris County under 42 U.S.C. § 1983 for inadequate officer training and for engaging in a "policy and practice of deliberate indifference to the care and custody of citizens and detainees." (*Id.* at 8–13). Last, Terrell sued Sheriff Gonzalez in his official and individual capacities for following a policy of failing to investigate or discipline deputies charged with a crime or with a crime "no-billed" by a grand jury. (*Id.* at ¶ 41). Harris County, Sheriff Gonzalez, and Deputy Cannon have moved to dismiss. (Docket Entry Nos. 19, 20, 25). Terrell has responded, and Harris County, Sheriff Gonzalez, and Deputy Cannon have replied. (Docket Entry Nos. 29, 30).

After careful consideration of the pleadings, the parties' arguments, the record, and the applicable law, the court grants Harris County's, Sheriff Gonzalez's, and Deputy Cannon's motions to dismiss. The dismissals are without prejudice and with leave to amend. Terrell may file an amended complaint no later than **June 10, 2022**. The reasons are explained below. Because Deputy Hines was only recently served, (Docket Entry No. 31), he has not answered yet or moved to dismiss, and the claims against him remain.

**I.     The Legal Standard**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a),

which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

II.     Analysis

    A.     **Deputy Cannon**

Deputy Cannon argues that Terrell cannot show that he was acting under color of state law, that Terrell has failed to plead that Deputy Cannon violated her constitutional rights by placing her in Deputy Hines's vehicle, and that he is entitled to qualified immunity. Terrell argues that Deputy Cannon acted under the auspices of his official authority, that he unreasonably seized her by placing her in Deputy Hines's officer vehicle, and that it is "obvious" under Fourth Amendment law that a seizure done in this manner was unreasonable.

    1.   **Under Color of State Law**

Deputy Cannon argues that Terrell has not pleaded that he was acting under color of state law when he helped place Terrell in Deputy Hines's vehicle. Deputy Cannon frames this argument as a bar to the court's subject matter jurisdiction. That is incorrect. The court has subject matter jurisdiction to hear claims arising under federal law—in this case, 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331. Under § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Whether Deputy Cannon was acting under "color of state law" turns on whether Terrell has properly pleaded one of the elements of a § 1983 claim, not on whether the court has jurisdiction to decide that question in the first instance.

On the merits, Deputy Cannon argues that allegations that he was wearing his uniform when he placed Terrell into Deputy Hines's officer vehicle are not sufficient to plead that he was acting under color of state law because he was working a second job. Terrell argues that Deputy

4

Hines and Deputy Cannon were acting under color of law because they were "wearing their full duty uniforms and equipment, drove their squad cars, and acted like police officers by ordering Ms. Terrell by words and actions into the front of Hines's squad car." (Docket Entry No. 29 at 4 (internal quotation marks omitted)).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation and internal quotation marks omitted). "It is clear that under 'color' of law means under 'pretense' of law. . . . Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States*, 325 U.S. 91, 111 (1945). "Whether an officer is acting under color of state law does not depend on his on- or off-duty status at the time of the alleged violation." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2005) (citing *United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991)). "Rather, the court must consider: (1) whether the officer 'misuse[d] or abuse[d] his official power,' and (2) if 'there is a nexus between the victim, the improper conduct, and [the officer's] performance of official duties.'" *Id.* at 464–65 (alterations in original) (quoting *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002)).

The question is whether Terrell has pleaded facts showing that the officers "used [their] official power to facilitate [their] actions." *Id.* at 465; *see also U.S. v. Dillion*, 532 F.3d 379, 386–87 (5th Cir. 2008) (an assistant city attorney acted under color of law when he used and referred to the authority and the power of his position during a sexual assault); *Bennett v. Pippin*, 74 F.3d 578, 589 (5th Cir. 1996) (a sheriff acted under color of law when he raped a woman after questioning her and he used and referred to his authority as sheriff to facilitate the act); *cf.*

5

*Townsend v. Moya*, 291 F.3d 859, 860–62 (5th Cir. 2002) (per curiam) (a former prison guard was not acting under color of state law when there was no genuine factual dispute that he was engaging in "horseplay" with an inmate and had purely private aims). In *Bustos*, several off-duty police officers got in an altercation with another patron at a bar. The officers created a human barricade, preventing the patron from leaving. 599 F.3d at 461. Because the officers were off duty, not in uniform, used no official weapon, and made no statements or threats asserting their authority as police officers, the patron did not plead that the officers' actions were under color of state law. *Id.* at 465–66.

Similarly, in *Gomez v. Galman*, 18 F.4th 769 (5th Cir. 2021) (per curiam), two off-duty police officers, who "wore no indicia of being officers, and did not formally announce their positions," harassed and beat the plaintiff at a bar. *Id.* at 774. When the plaintiff followed the officers outside the bar, the officers told him to stop, and beat him again. *Id.* When the plaintiff tried to get in his vehicle to go home, the officers stopped him. *Id.* The Fifth Circuit held that the plaintiff in *Gomez* had sufficiently alleged that the officers misused their official power and acted under color of law because the plaintiff had obeyed the officers' commands to stop as if he believed them to be police officers, the officers used techniques to restrain the plaintiff that they would have used if arresting someone, and the officers called for backup. *Id.* at 776.

Terrell has alleged facts supporting an inference that Deputy Cannon and Deputy Hines acted with an "air of authority," sufficient to plead that they were acting under color of state law when they placed her in Deputy Hines's officer vehicle. *Id.* at 777. Terrell pleaded that both Deputy Cannon and Deputy Hines wore their official uniforms and had their guns, badges, and other official equipment with them. They both drove marked vehicles. They ordered Terrell to get into Deputy Hines's officer vehicle allegedly against her will. (Docket Entry No. 13 at ¶¶ 12–

6

13, 15, 17). She has sufficiently pleaded, at this stage, that the officers used their official power to facilitate their actions of placing Terrell into Deputy Hines's vehicle.[1]

### 2. Deputy Cannon's Claim to Qualified Immunity

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant invokes qualified immunity, "the burden shifts to the plaintiff to show that the defense is not available." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted).

A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021). "These steps may be considered in either order." *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018).

The first prong requires the plaintiff to point to facts that could support a finding of a constitutional rights violation. *Pearson*, 555 U.S. at 232. The second prong requires the plaintiff to show that "'the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (alterations in original) (citation omitted). In other words, "[t]o defeat qualified immunity, a plaintiff must demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Shumpert*, 905 F.3d at 321 (emphasis

---

[1] The court does not hold, at this time, whether Deputy Hines was acting under color of law when the sexual assault was committed.

7

omitted) (quoting *Hernandez v. United States*, 785 F.3d 117, 120 (5th Cir. 2015) (en banc)). "In determining what constitutes clearly established law, th[e] court first looks to Supreme Court precedent and then [to Fifth Circuit precedent]. If there is no directly controlling authority, [the] court may rely on decisions from other circuits to the extent that they constitute 'a robust consensus of cases of persuasive authority.'" *Shumpert*, 905 F.3d at 320 (citations omitted).

At the motion to dismiss stage, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "After the district court finds a plaintiff has so pleaded, if the court remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (emphasis omitted) (citations and internal quotation marks omitted).

The Fourth Amendment prohibits unreasonable seizures. U.S. CONST. amend. IV. "Under the Fourth Amendment, a seizure occurs when, under the totality of the circumstances, a reasonable person would have thought he was not free to leave." *Keller v. Fleming*, 952 F.3d 216, 222 (5th Cir. 2020) (citing *Michigan v. Chesternut*, 486 U.S. 567, 572 (1988)). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1968) (internal quotations omitted). "Absent probable cause, warrantless searches and seizures are presumptively invalid or '*per se* unreasonable under

the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *Keller*, 952 F.3d at 223 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

Terrell was allegedly placed into Deputy Hines's vehicle against her will by uniformed officers. Placing a person in an officer's vehicle without that person's consent is a seizure under the Fourth Amendment.² A reasonable person would not feel free to leave if placed into a squad car by a uniformed officer, especially if the person has already communicated to the officer her unwillingness to do so. *See Keller*, 952 F.3d at 223 (a seizure occurred when an officer stopped a person walking along the road and encouraged the person to sit in the backseat of the officer's patrol car).

Because there is no question that the facts alleged pleaded a seizure, the "relevant question . . . is . . . whether a reasonable officer could have believed [the seizure] to be lawful, in light of clearly established law and the information the . . . officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "In other words, Plaintiffs must point this court to a legislative directive or case precedent that is sufficiently clear such that every reasonable official would have understood that what he is doing violates that law." *Keller*, 952 F.3d at 225 (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). To avoid dismissal on the basis of qualified immunity, it is Terrell's burden to point to precedent that under the circumstances and clearly established law, Deputy Cannon's seizure was unreasonable.

Terrell alleges that Deputy Cannon helped place her into Deputy Hines's vehicle with the purpose of facilitating a sexual assault on her by Deputy Hines. But Terrell herself pleaded that

---

² Deputy Cannon asks this court to convert his motion to dismiss to a motion for summary judgment and consider video evidence of Terrell being placed into the officer vehicle. *See* FED. R. CIV. P. 12(d). The video, however, is not dispositive. The video appears to show Deputy Hines and Deputy Cannon asking a drunken Terrell to get into the front seat of the officer vehicle, but she says "no" multiple times. The video aligns with the facts pleaded in the complaint and does not warrant conversion at this stage.

when she left the bar, "there was visibly and audibly something wrong with her and she was not in her usual state of mind," and that "Deputy Cannon, by words and actions, put Terrell into the front seat of Deputy Hines' [*sic*] squad car with the stated goal of driving [her] home." (Docket Entry No. 13 at ¶¶ 16–17). "Fourth Amendment reasonableness 'is predominantly an objective inquiry.'" *al-Kidd*, 563 U.S. at 736 (citation omitted). The court must "ask whether 'the circumstances, viewed objectively, justify [the challenged] action,'" and "[i]f so, that action was reasonable 'whatever the subjective intent' motivating the relevant officials." *Id.* (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978); *Whren v. United States*, 517 U.S. 806, 814 (1996)).

Under the objectively viewed circumstances, Deputy Cannon placed Terrell into the officer vehicle to prevent her from driving home in her own car because she was visibly not in a state to drive. Although Terrell alleges that Deputy Cannon's "real motive may have been to allow sexual assault of Ms. Terrell by Deputy Hines," the Fourth Amendment question is one of objective reasonableness. *See Webb v. Arbuckle*, 456 Fed. Appx. 374, 380 (5th Cir. Dec. 29, 2011) (per curiam) ("[T]he officers' subjective motivations for the initial stop did not render the seizure unconstitutional.").

Terrell does not articulate any clear theory as to why Deputy Cannon's objective act of preventing her from driving home when she was not visibly capable of doing so was "unreasonable" under clearly established law. Nor does she point to precedent supporting that conclusion. Terrell's argument that Deputy Cannon is not entitled to qualified immunity is as follows:

> Here, the violation is both obvious and supported by much caselaw. First of all, the violation is obvious because Cannon himself concedes that "Ms. Terrell was not put in the car because of a crime or because of probable cause." Absent any justifiable reason to seize Ms. Terrell or detain her in Hines's squad car, his choice to detain her cuts against the very heart of what the Fourth Amendment seeks

> to prohibit. Moreover, the numerous cases cited above clearly establish both Ms. Terrell's rights in this situation and make it clear to every reasonable officer that detaining Ms. Terrell in this manner is unconstitutional. Moreover, *Gomez* provides a case on point. That case also involve [*sic*] police officers at a bar, interacting with a bar patron, using their authority to harm and detain that patron without cause. Thus, Ms. Terrell easily overcomes Defendant Cannon's qualified immunity defense.

(Docket Entry No. 29 at 8 & n. 49). The cases that Terrell cites do not clearly establish that it is objectively unreasonable for an officer to help drive someone home when that person is not in a state to drive herself.

Taken at more general level, Terrell has not cited to precedent to support a claim that an officer who prevents someone from causing likely imminent harm to themselves or others has clearly performed an unreasonable seizure. *See California v. Hodari D.*, 499 U.S. 621 (1991) (no seizure occurred when a plaintiff did not submit to an officer's show of authority); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (no seizure occurred under the totality of circumstances); *Brower v. County of Inyo*, 489 U.S. 593 (1989) (a seizure occurred when police set up a roadblock with the intention of stopping the plaintiff, but the Court did not decide whether the seizure was unreasonable); *Brendlin v. California*, 551 U.S. 249 (2007) (a passenger is seized under the Fourth Amendment when a traffic stop occurs); *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) (collecting cases for propositions about what constitutes a seizure under the Fourth Amendment); *Gomez*, 18 F.4th 769 (deciding whether officers were acting under color of state law but not opining on whether a Fourth Amendment seizure had occurred).

On the facts alleged, and with the inferences drawn in Terrell's favor, Deputy Cannon is entitled to qualified immunity because Terrell has not met her burden to show that helping

someone get home who is not fit to drive herself safely is an unreasonable seizure under clearly established law. The § 1983 claim against Deputy Cannon is dismissed.

### B.     Sheriff Gonzalez

The allegations in Terrell's complaint relating to the Sheriff are scant. They state:

> 10.   September 12, 2018 Deputy Hines was arrested for Sexual Assault of a Child in Harris County, Texas. This was reported to the Harris County Sheriff's Office . . . and Sheriff Gonzalez was aware of the charges. The [Harris County Sheriff's Office] records regarding this incident are not available through the open records laws.
>
> . . .
>
> 44.   Sheriff Gonzalez is a policymaker for Harris County is [sic] regards to officer discipline and investigations and the [Harris County Sheriff's Office] policies generally and does not investigate and/or discipline officers alleged of crimes if they are no-billed by a Grand Jury including sexual assault of a minor. Grand Jury proceedings are secret including as to Sheriff Gonzalez and [Harris County Sheriff's Office] employees. Sheriff Gonzalez does not investigate and/or discipline deputies accused of policy violations if the complainant is charged with a crime even if the deputy is the one the complainant id [sic] complaining about. This also creates Harris County liability and individual liability for Sheriff Gonzalez.

(Docket Entry No. 13).

Terrell's argument, clarified in her response, is that Sheriff Gonzalez is liable in his individual and official capacities under § 1983 for "fail[ing] to investigate or discipline officers that have been criminally charged or accused of policy violations in general," and specifically, when an accusation has been brought before a grand jury, even if the grand jury no-bills the defendant. (Docket Entry No. 29 at 9–10). A no-bill occurs in Texas when at least nine jurors do not find cause to enter a bill of indictment. *See* TEX. CODE CRIM. P. ART. 20A.301. Sheriff

Gonzalez argues that Terrell has not pleaded facts supporting supervisor liability for failure to investigate or discipline and retain officers based on no-billed charges.

"In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Parker v. Blackwell*, 23 F.4th 517, 522 (5th Cir. 2022) (alterations in original) (emphasis omitted) (citing *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009)). "[D]eliberate indifference to the known or obvious consequences of a hiring decision can amount to a constitutional violation on the part of the decision maker[.]" *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Gros v. City of Grand Prairie*, 209 F.3d 431, 433 (5th Cir. 2000)). Put another way, "[f]or an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (citations omitted). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Walker v. Upshaw*, 515 Fed. Appx. 334, 339–40 (5th Cir. Mar. 4, 2013) (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)).

Terrell has not cited to any case in her response to support her argument that it is "obvious" that serious constitutional harm will result from the failure of a deputy sheriff's supervisor to address a no-billed grand jury charge. Nor has she pleaded that Sheriff Gonzalez was aware of a pattern of deputies with no-billed grand jury charges inflicting injury onto others. *See Gomez*, 18 F.4th at 778 (factual allegations that an officer had previously performed an illegal strip search of

an arrestee and, at another time, caused destruction to a car by headbutting its side mirror, were not sufficient to establish that a county was deliberately indifferent in hiring or retaining him because the past instances were unlike alleged conduct of brutal physical violence towards another citizen at a bar).

There is no support in case law that a sheriff who is aware that one of his deputies charged with an assault of a minor, which was later no-billed by a grand jury, should have been aware that the deputy posed a substantial risk of serious harm to future persons like Terrell. Because Terrell has not pleaded deliberate indifference as to the sheriff, the individual and official capacity claims against him are dismissed.

### C. Harris County

Harris County argues that Terrell has not plausibly stated a § 1983 claim against it because she has not alleged facts that show that the County had an unconstitutional policy.[3] Terrell argues in her response that Harris County has failed to train its employees about their legal duties as evidenced by the "outrageousness of the action itself," and that Harris County was deliberately indifferent to Terrell's "rights to freedom, bodily integrity, and humane conditions as a detainee" and "to the public by failing to properly screen and investigate their deputies and enforce appropriate standards for the treatment of detainees generally." (Docket Entry No. 29 at 10–11).

Municipalities and supervisory officials are not liable for the conduct of their employees on the basis of respondeat superior. *Burns v. City of Galveston*, 905 F.2d 100, 102 (5th Cir. 1990). Municipal liability under § 1983 "requires proof of three elements: a policy maker; an official

---

[3] Harris County first spends several pages of its brief arguing that is entitled to immunity against Terrell's state law intentional tort claim. (Docket Entry No. 19 at 13–15). While this may be true, the court does not construe Terrell's First Amended Complaint as asserting any intentional tort claim against Harris County. All claims identified in the First Amended Complaint are § 1983 claims for violations of the Fourth and Fourteenth Amendments. This is further clarified by Terrell's response, which argues only that Harris County is liable under § 1983 as a municipality. (Docket Entry No. 29 at 10).

policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). "The official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citations omitted); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell*, 436 U.S. at 691)). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of. Cty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997) (internal quotation marks omitted). "A showing of simple or even heightened negligence will not suffice." *Id.* at 407. Instead, it "must amount to an intentional choice, not merely an unintentionally negligent oversight." *James*, 557 F.3d at 617–18 (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Official policy may be found in "written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Forth Worth*, 588 F. 3d 838, 847 (5th Cir. 2009) (citation and internal quotation marks omitted); *Piotrowski*, 237 F.3d at 581–82. "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Jackson v. Valdez*, 852 Fed.

Appx. 129, 135 (5th Cir. May 18, 2021) (citation omitted). "To plausibly plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to [her] injury." *Id.* (quoting *Peña v City of Rio Grande*, 879 F.3d 613, 622 (5th Cir. 2018)).

> As the Fifth Circuit has summarized, its
>
>> caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim."

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (citations omitted).

Terrell's argument is that Harris County had a policy of failing to train its officers about how to treat persons in its custody as shown by the alleged act of sexual assault on Terrell by Deputy Hines while she was in the officer's custody.

"To state a cognizable failure-to-train claim, a plaintiff must plead facts plausibly demonstrating that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violations in question." *Jackson*, 852 Fed. Appx. at 135 (citing *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009)). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). "If actions of city employees are to be used to prove a

16

custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984). "'Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy' as required for municipal section 1983 liability." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995).

Terrell's complaint contains no specific allegation about the substance, content, or deficiencies of Harris County's officer training practices relating to treatment of persons in custody. *See Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) ("Defects in a particular training program must be specifically alleged." (citation omitted)). The single, isolated incident alleged involving Deputy Hines and Deputy Cannon is not sufficient to support an inference that Harris County had a policy of failing to train its deputies about the rights of persons in their custody. *See Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 483 (5th Cir. 2021) (the plaintiffs' allegation that "[t]he fact that [an] incident occurred *at all* demonstrates the obvious need for Dallas County to provide its officers with additional or different training" was conclusory (emphasis in original)); *Anokwuru v. City of Houston*, 990 F.3d 956, 965–66 (5th Cir. 2021) (similar).

Terrell has failed to plead an official policy of failing to train officers. The claims against Harris County are dismissed.

## III.    Conclusion

Harris County's original motion to dismiss, (Docket Entry No. 8), was mooted by Terrell's first amended complaint. Harris County's motion to dismiss the amended complaint, (Docket Entry No. 19), is granted. Deputy Cannon's motion to dismiss, (Docket Entry No. 20), is granted.

Gonzalez's motion to dismiss, (Docket Entry No. 25), is granted. The dismissals are without prejudice and with leave to amend. Terrell may file an amended complaint no later than **June 10, 2022**. The claims against Deputy Hines remain.

SIGNED on May 11, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge