Case 4:22-cv-00302 Document 47 Filed on 09/06/22 in TXSD Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
September 06, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHANITA TERRELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-22-302 |
| | § | |
| HARRIS COUNTY *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Shanita Terrell alleges that she was leaving a bar on the night of February 23, 2020, when two Harris County Sheriff's deputies, Michael Jarell Hines and Mark Cannon, who were working a second job at the bar, violated her civil rights by forcing her into Deputy Hines's patrol vehicle; later that night, Deputy Hines sexually assaulted her. (Docket Entry No. 37 ¶¶ 12, 16-22). Terrell sues both deputies. She also sues Harris County Sheriff Ed Gonzalez, seeking to hold him liable for a policy of failing to investigate or discipline deputies charged with crimes or who are subjects of grand jury proceedings. (*Id.* ¶ 58). Finally, Terrell sues Harris County, alleging that it "engaged in a policy and practice of deliberate indifference to the care and custody of citizens and detainees," or failed to train its employees to prevent the kind of harm Terrell suffered. (*Id.* ¶¶ 44–46). Terrell's claims are brought under 42 U.S.C. § 1983 for violations of her Fourth and Fourteenth Amendment rights. Deputies Hines and Cannon are sued in their individual capacities; Sheriff Gonzalez is sued in both his official and individual capacities. Deputy Cannon, Sheriff Gonzalez, and Harris County have moved to dismiss, and Terrell has responded. (Docket Entry Nos. 39, 40, 44, 46). Although he was served on May 2, 2022, (Docket Entry No. 31), Deputy Hines has yet to appear.

The court dismissed Terrell's previous amended complaint as to Deputy Cannon, Sheriff Gonzalez, and Harris County, without prejudice, emphasizing that Terrell's own allegations that she could not drive herself safely made it reasonable for the deputies to place her in the patrol vehicle to be driven home.  (Docket Entry No. 32).  Terrell filed a second amended complaint, which attempts to address the deficiencies the court identified in her first amended complaint.  (Docket Entry No. 37).  But Terrell's new allegations are still not enough to defeat qualified immunity as to Deputy Cannon and Sheriff Gonzalez or to state a § 1983 claim against Harris County.  The court dismisses the second amended complaint with prejudice with respect to Deputy Cannon, Sheriff Gonzalez, and Harris County, because Terrell has amended twice previously and further amendment would be futile.

I.     **The Legal Standard**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* At 678 (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## II.   Analysis

### A.   Deputy Cannon

#### i.   Under Color of State Law

The court's previous opinion rejected Deputy Cannon's argument that Terrell's complaint failed to state a claim under 42 U.S.C. § 1983. (Docket No. 32 at 4–7). Deputy Cannon renews his attack on the sufficiency of Terrell's allegations in her second amended complaint, directing particular attention to Terrell's new allegation in paragraph 27. (Docket Entry No. 39 at 3). In that paragraph, Terrell alleges that "Deputy Cannon was aware that forcing Ms. Terrell into the front seat of Deputy Hines's squad care was conceptually equivalent to forcing her into the front seat of a private citizen's vehicle." (Docket Entry No. 37 ¶ 27). Deputy Cannon argues that this allegation is incompatible with a claim under § 1983, which reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

>   thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983. Deputy Cannon also urges the court to ignore Terrell's "speculative" allegations that someone may have given her the "date-rape" drug, Rohypnol, while she was in the bar. (Docket Entry N*9/o. 39 at 1–2).

Terrell responds to Deputy Cannon's motion by stating that the allegations in question are directed to address his defense of qualified immunity and are compatible with a § 1983 claim. (Docket Entry No. 44 at 8–9). Terrell argues that "Cannon's knowledge of the effect of his and Hines's off-duty status is not mutually exclusive of the argument that he used his authority as a deputy to facilitate his seizure of Ms. Terrell." (*Id.* at 9). Rather, Terrell's allegation of "conceptual[] equavalen[cy]" between Deputy Hines's patrol vehicle and a private car goes to the question of Deputy Cannon's qualified immunity. Terrell asserts that "[t]here [is] no set of circumstances . . . in which forcing a person against their will into a private actor's private vehicle would be a reasonable means of conducting a Fourth Amendment seizure." (Docket Entry No. 44 at 6). The Rohypnol allegation is similarly made to "support the reasonable inference that Cannon's objective conduct was in service of Hines's alleged plan to drug and sexually assault Ms. Terrell." (*Id.* at 7). Finally, Terrell argues that the Rohypnol allegations are not speculative because Rohypnol intoxication looks similar to alcohol intoxication, (Docket Entry No. 44 at 8).

Terrell has stated a claim under § 1983, even if she casts the off-duty deputies as private actors because of her need to overcome their qualified immunity. Terrell still alleges that Deputies Hines and Cannon wore their Harris County Sheriff's Office uniforms, badges, guns, and other equipment, drove their squad cars, and that she feared arrest if she refused to get into Deputy Hines's squad car. (Docket Entry No. 37 ¶¶ 12, 17, 19). "Whether an officer is acting under color of state law does not depend on his on- or off-duty status at the time of the alleged violation."

4

*Tyson v. Sabine*, 42 F.4th 508, 512 (5th Cir. 2022) (alteration removed) (quoting *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010)). As more fully discussed in the court's previous opinion, Terrell's allegations state a claim under § 1983. (*See* Docket Entry No. 32 at 4–7). The critical issue is whether the factual allegations in the second amended complaint plausibly overcome the qualified immunity defense.

### ii. Qualified Immunity

The court previously dismissed Terrell's claim against Deputy Cannon because of qualified immunity, (Docket Entry No. 32 at 7–12), and Deputy Cannon again raises that defense. (Docket Entry No. 39 at 4–5). Terrell's new allegations and briefing suggest that Deputy Cannon cannot invoke qualified immunity because, when the allegedly unlawful seizure occurred, he was not on duty. Terrell argues that "forcing [her] into the front seat of Deputy Hines's squad car was conceptually equivalent to forcing her into the front seat of a private citizen's vehicle." (Docket Entry No. 37 ¶ 27). She argues, "[t]here [is] no set of circumstances that Plaintiff can conceive in which forcing a person against their will into a private actor's private vehicle would be a reasonable means of conducting a Fourth Amendment seizure." (Docket Entry No. 44 at 6). Contrary to Terrell's argument, Deputy Cannon's off-duty status does not preclude him from asserting qualified immunity.

The Fifth Circuit extends qualified immunity to peace officers working for a private employer when off duty in at least some circumstances. These situations generally involve situations in which an off-duty officer is acting to "enforc[e] the general laws." *Davidson v. AT&T Mobility, LLC*, No. 3:17-CV-0006-D, 2019 WL 486170, at *10 (N.D. Tex. Feb. 7, 2019); *see also*, *e.g.*, *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 755 (5th Cir. 2001) (an off-duty police officer was entitled to qualified immunity after arresting a plaintiff while working as a store security guard). Indeed, a Texas peace officer's "'off-duty' status is not a limitation upon his or

5

her discharge of police authority in the presence of criminal activity." *Defrates v. Podany*, 789 F. App'x 427, 431 n.2 (5th Cir. 2019) (internal quotation marks and citations removed). In other situations, the Fifth Circuit has assumed without discussion that the off-duty officer could raise the defense and nonetheless denied it. *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (an off-duty officer responding to a traffic violation was not entitled to qualified immunity because the officer allegedly violated clearly established law). Finally, there are cases in which an officer, regardless of duty status, was not acting under color of law. In those situations, qualified immunity did not apply because the plaintiff could not assert a § 1983 claim. *See, e.g.*, *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (dismissing a § 1983 claim involving an assault by an on-duty officer, because the assault "arose out of an argument over family and political matters and [the plaintiff] was neither arrested nor threatened with arrest").

Neither the Fifth Circuit nor the Supreme Court has provided clear guidance as to when off-duty law enforcement officers are entitled to assert the qualified immunity defense to allegations of actions taken under color of law. *See Davidson*, 2019 WL 486170, at *10 n.14 (noting lack of Fifth Circuit caselaw directly addressing the question); *Bracken v. Okura*, 869 F.3d 771, 777 & n.4 (9th Cir. 2017) (observing lack of Supreme Court or circuit precedent). Here, Deputy Cannon was allegedly acting under color of law when he put Terrell in Deputy Hines's Sheriff's Department vehicle. Deputy Cannon asserts that his actions in placing an intoxicated Terrell in the car "to prevent her from driving" were reasonable. (Docket Entry No. 39 at 5).

In the absence of clear guidance about off-duty law enforcement officers, courts look to "both to history and to the purposes that underlie government employee immunity in order to find the answer [of whether qualified immunity may be asserted.]" *Richardson v. McKnight*, 521 U.S. 399, 404 (1997). A court first asks whether "[h]istory reveal[s] a firmly rooted tradition of

6

immunity," *id.,* then asks whether granting immunity would serve the purposes of the doctrine, namely "protecting 'government's ability to perform its traditional functions' by providing immunity where 'necessary to preserve' the ability of government officials 'to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service.'" *Id.* at 407–408 (quoting *Wyatt v. Cole*, 504 U.S. 158, 167 (1992)).

The *Bracken* court's historical review found no basis to grant qualified immunity to officials not engaged in their duties as public servants. *Bracken*, 869 F.3d at 777–78; *see also Filarsky v. Delia*, 566 U.S. 377, 388 (2012) (observing the long tradition of affording immunity "for actions taken while engaged *in public service* on a temporary or occasional basis") (emphasis added); *Richardson*, 521 U.S. at 414 (Scalia, J., dissenting) (noting "our settled practice of determining § 1983 immunity on the basis of the public function being performed"). In light of that historical analysis, the court therefore proceeds to determine whether the purpose of qualified immunity would be served by allowing Deputy Cannon to assert it on the facts Terrell alleges.

The facts and disposition of *Bracken* are helpful. There, a private security guard assaulted the plaintiff after he stepped over a rope at a hotel party without wearing the required wristband. *Id.* at 775. An off-duty but uniformed police officer, also working security, did not participate in the assault, but also did not try to help the plaintiff, who sued the officer for failing to intercede during the assault. *Id.* The Ninth Circuit observed that the officer was not preventing the plaintiff from committing a crime or fulfilling some other public duty; rather, the officer "aided the hotel in realizing its goal of issuing Bracken a warning [regarding Bracken's trespass]." *Id.* at 778. The court concluded that those facts did not implicate the policies supporting qualified immunity and therefore denied the officer its use. *Id.* at 778.

7

Terrell alleges that when she left the bar, "there was visibly and audibly something wrong with her and she was not in her usual state of mind." (Docket Entry No. 37 ¶ 18). She acknowledges that she was, and appeared to be, intoxicated. (*Id.*). In her intoxicated state, she encountered the deputies, who, she alleges, "forced" her into the front seat of Deputy Hines's car. (*Id.* ¶ 19). She alleges that the "real motive" of Deputies Cannon and Hines "may have been to allow sexual assault of Ms. Terrell by Deputy Hines." (*Id.*). She argues that the totality of circumstances, including that Deputy Cannon placed her in Deputy Hines's car rather than call a taxi, or put her in the care of her cousin who was also at the bar, or ordering her to wait to drive herself until she was no longer intoxicated, or transporting her to the "sobering center," all "support the reasonable inference that Deputy Cannon's objective conduct was in service of Deputy Hines's alleged plan to drug and sexually assault [her.]" (Docket Entry No. 44 at 7).

While the court credits Terrell's well-pleaded factual allegations, her allegations about Deputy Cannon's motive are speculative. The factual allegations in the second amended complaint do not support an inference that Deputy Cannon intended to help Deputy Hines sexually assault Terrell. According to the allegations, Deputy Cannon's involvement ended when he placed her in Deputy Hines's car for the stated purpose of having Deputy Hines drive her home because she was too intoxicated to drive herself safely and lawfully. There is no allegation that Deputy Hines or Cannon said or did anything that could be interpreted as revealing an intention to have Deputy Hines sexually assault Terrell after Deputy Cannon put her in the patrol car. The deputies told Terrell that because she was too intoxicated to drive herself, they would "take her home." (Docket Entry No. 37 ¶ 19). Neither Terrell's allegations of what occurred in the parking lot, nor her allegations that there were other means of keeping Terrell off the road, give rise to the inference that Deputy Cannon intended to aid Deputy Hines in sexually assaulting Terrell. The allegations

as to Deputy Cannon's actions, and the reasonable inferences to which those allegations give rise, are consistent with Deputy Cannon's duties as a peace officer to prevent a potential crime and harm to the public. Deputy Cannon may assert qualified immunity.

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant invokes qualified immunity, "the burden shifts to the plaintiff to show that the defense is not available." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted).

A plaintiff seeking to overcome qualified immunity must allege facts that could show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021). "These steps may be considered in either order." *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018).[1]

The court previously found that Terrell's allegations did not overcome Deputy Cannon's qualified immunity. (Docket Entry No. 32 at 7–12). In her brief, Terrell quotes the court's previous evaluation of her allegations: "Terrell [did] not articulate any clear theory as to why Deputy Cannon's objective act of preventing her from driving home when she was not visibly capable of doing so was 'unreasonable' under clearly established law." (Docket Entry No. 44 at 3) (quoting Docket Entry No. 32 at 10). Terrell contends that her new allegations supply this theory in two

---

[1] The court's prior opinion provides a more comprehensive discussion of the legal standard governing qualified immunity and its application to Deputy Cannon's actions as alleged in the prior complaint. (*See* Docket Entry No. 32 at 7–12).

9

ways. First, she argues that Deputy Cannon's knowledge of Deputy Hines's off-duty status made his actions "clearly unreasonable." (*Id.* at 4-5). Second, she argues that her allegation that Deputy Hines gave her Rohypnol provides a basis from which the court could "reasonably infer that Cannon, by acting in concert with Hines, was aware of and participated in this plan [to sexually assault Terrell.]" (*Id.* at 5).

Terrell's new allegations do not provide a basis to infer that placing an intoxicated individual into the squad car of an off-duty officer was an objectively unreasonable seizure. Deputy Hines, like Deputy Cannon, was an off-duty Sheriff's Deputy. Deputy Cannon's actions were not "equivalent to forcing Ms. Terrell into the front seat of a random employee or patron's private car that has no law enforcement background or ties." (Docket Entry No. 44 at 4). In Texas, "[p]eace officers retain their status as peace officers twenty-four hours a day, which means that a police officer's 'off-duty' status is not a limitation upon the discharge of police authority in the presence of criminal activity." *Garza v. Harrison*, 574 S.W.3d 389, 403 (Tex. 2019) (quotation marks and citations omitted). Despite his off-duty status, Deputy Cannon's actions were taken in the course of his law-enforcement role, and they were objectively reasonable.

As explained in the court's prior opinion, subjective motivations are generally irrelevant to the Fourth Amendment seizure analysis. (Docket Entry No. 32 at 10). Terrell's allegations do not support an inference that Deputy Cannon sought to aid Deputy Hines in sexually assaulting Terrell. There is no allegation that Deputy Cannon had a reason to believe that Deputy Hines was involved in administering whatever substance had made Terrell so intoxicated. The claims against Deputy Cannon are dismissed.

**B.    Sheriff Gonzalez**

Terrell's second amended complaint alleges the following as to Sheriff Gonzalez:

> [¶ 32] Sheriff Gonzalez is a policymaker for Harris County is regards to officer discipline and investigations and the HCSO policies generally and does not investigate and/or discipline officers alleged of crimes if they are no-billed by a Grand Jury including sexual assault of a minor. Grand Jury proceedings are secret including as to Sheriff Gonzalez and HCSO employees. Sheriff Gonzalez does not investigate and/or discipline deputies accused of policy violations if the complainant is charged with a crime even if the deputy is the one the complainant is complaining about. There are many reasons a person charged with Sexual Assault of Child by a Harris County Grand Jury may be no-billed such as the child died or became incompetent or a witness died or became incompetent.
>
> [¶ 57] Sheriff Gonzalez does not investigate and/or discipline deputies accused of policy violations if the complainant is charged with a crime even if the deputy is the one the complainant is complaining about. This also creates Harris County liability and individual liability for Sheriff Gonzalez.
>
> [¶ 58] Sheriff Gonzalez maintains a policy of not conducting IAD investigations if a criminal case is pending against the complainant, even if the complaint is about the arrest itself or the arresting deputy. This policy has led to a custom and practice among HSCO deputies of arresting citizens with impunity in numerous circumstances as a default response.

(Docket Entry No. 37). Terrell argues that Sheriff Gonzalez may be liable if he "affirmatively participates in acts which cause a constitutional deprivation, or implements an unconstitutional policy that causally result in the plaintiff's injuries." (Docket Entry No. 44 at 11) (citation omitted).

As authority for her claim, Terrell cites *Black v. Stephens*, 662 F.2d 181 (3d Cir. 1981). *Black* affirmed a liability finding against a police chief for his subordinate's unconstitutional actions. But, as Sheriff Gonzalez and Harris County point out, (Docket Entry No. 40 at 5), *Black* stands for the proposition that a supervisor may be held liable when the supervisor's actions proximately caused the plaintiff's injury. *Black*, 662 F.2d at 189. In *Black*, the police chief personally created and implemented the disciplinary policy that caused harm to the plaintiff. *Id.* The challenged policy was that an arrestee's complaint against a police officer would not be investigated until the charges against the arrestee were finally adjudicated. *Id.* at 189–90. The *Black* plaintiff was arrested, complained about the arresting officer, met with the police chief, and,

11

days later, had additional unwarranted charges filed against him in an apparent attempt to delay any investigation into the arresting officer. *Id.* at 190.

There is no such causal relationship between Sheriff Gonzalez's actions and Terrell's injury. Terrell had not complained about Deputy Hines so as to trigger a possible investigation. A policy of postponing investigations into complaints against police officers until a complainant's criminal charges are resolved is irrelevant here; Terrell was not criminally charged and she had not complained about Deputy Hines. The general allegations that Sheriff Gonzalez generally does not investigate or discipline deputies accused of policy violations, or presides over a "custom and practice among HSCO deputies of arresting citizens with impunity in numerous circumstances," (Docket Entry No. 37 ¶ 58), are not causally related to Deputy Hines's alleged assault of Terrell.

Additionally, Terrell argues that her case should proceed against Sheriff Gonzalez because he did not investigate Deputy Hines after the grand jury no-billed him. As discussed in the court's previous opinion, Terrell has not pleaded that Sheriff Gonzalez was aware of a pattern of no-billed deputies later harming others. (Docket Entry No. 32 at 13). And Terrell has not pointed to authority holding that a supervisor may be held liable for failing to investigate the allegations that resulted in a grand jury no-billing the officer. The allegation that Sheriff Gonzalez did not investigate Deputy Hines after the grand jury declined to indict him does not state a claim under § 1983 for supervisory liability.

### C.   Harris County

Terrell's new allegations in her second amended complaint against Harris County center on the inadequate training it allegedly provided Deputies Cannon and Hines:

> [¶ 46]  In addition, and in the alternative, Harris County provided inadequate training to Deputies Hines and Cannon on the appropriate protocol with respect to the use of the front seat of a squad car, the use of an off duty deputy's squad car, and the safe treatment of intoxicated persons, specifically persons under the effect of date-rape drugs. This lack of training was deliberately indifferent to the rights

12

of citizens that encounter HCSO deputies at HCSO-approved security jobs where alcohol and, by extension, opportunities for the use of date-rape drugs are plentiful, such as Deputy Hines and Cannon's HCSO-approved security job at The Address. Proper training in this area would have prevented Deputy Cannon from assisting Deputy Hines in forcing Ms. Terrell into Hines's squad car, and helped both deputies recognize the effects of a date-rape drug and respond in a manner that would have kept Ms. Terrell safe from sexual assault, such as by getting her to the Sobering Center.

[¶ 47] Additionally, Harris County did not train Mark Cannon nor . . . Hines to take Ms. Terrell to the sobering center when the sobering center was designed for people like Ms. Terrell with its gender specific dorms to prevent sexual assault.

"[Fifth Circuit] caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability":

First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim."

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (citations omitted).[2]

These new allegations do not alter the court's previous conclusion that the single, isolated alleged incident involving Deputy Hines and Deputy Cannon is insufficient to support an inference that Harris County had a policy of failing to train its deputies about the rights of persons in their custody. (Docket Entry No. 32 at 17). The new allegations about the Sobering Center do not change the fact that the only allegation is of single incident. *See Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 483 (5th Cir. 2021) (the plaintiffs' allegation that "[t]he fact that [an] incident occurred at all demonstrates the obvious need for Dallas County to provide its officers with additional or

---

[2] A full discussion of the standard for municipal liability may be found in the court's prior opinion. (*See* Docket Entry No. 32 at 14–17).

13

different training" was conclusory (emphasis in original)); *Anokwuru v. City of Houston*, 990 F.3d 956, 965–66 (5th Cir. 2021) (similar).

### D. Whether the Complaint against Deputy Cannon, Sheriff Gonzalez, and Harris County Should Be Dismissed with Prejudice

Terrell has twice amended her complaint, without success. The claims against Deputy Cannon, Sheriff Gonzalez, and Harris County are dismissed, with prejudice, because amendment would be futile. Terrell's claims against Deputy Hines remain.

### III. Conclusion

The court grants the motions to dismiss, (Docket Entry Nos. 39, 40), with prejudice with respect to Deputy Cannon, Sheriff Gonzalez, and Harris County.

SIGNED on September 6, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge